2012 ND 140

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gale Lee BRUCE, Defendant and Appellant.**

**No. 20110360.**

Supreme Court of North Dakota.

July 12, 2012.

Reid A. Brady (on brief) and Kimberlee J. Hegvik (argued), Assistant State's Attorneys, Fargo, N.D., for plaintiff and appellee.

Monty G. Mertz, Fargo Public Defender Office, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Gale Bruce appeals from a judgment entered after the district court convicted him of menacing under N.D.C.C. § 12.1–17–05. We affirm the judgment, concluding the State presented sufficient evidence at trial for the court to find Bruce guilty beyond a reasonable doubt.

I

[¶ 2] After a May 29, 2011, altercation with Fargo police officers in downtown Fargo, the State charged Bruce with menacing under N.D.C.C. § 12.1–17–05, which states: "A person is guilty of a class A misdemeanor if he knowingly places or attempts to place another human being in fear by menacing him with imminent serious bodily injury." The State alleged Bruce knowingly clenched his fists, threatened to hurt and hospitalize two police officers, and stepped toward the officers, thereby causing the officers to fear imminent serious bodily injury.

[¶ 3] Bruce waived his right to a jury trial, and at a bench trial, the district court heard testimony from three Fargo police officers—Jeremiah Ferris, Jason Moszer, and Patrick Fylling. Officer Ferris testified that he and Officer Moszer responded to a dispatch call about a possible trespasser near a store in downtown Fargo on May 29, 2011. Officer Ferris testified he and Officer Moszer arrived at the scene in separate, marked police cars and they were both wearing police uniforms. Officer Fylling testified he arrived at the scene shortly after the other two officers. Officer Ferris and Officer Moszer testified they initially approached Bruce in an alley-

way, and Bruce stated, "Oh, there's two of you. This is gonna be fun." Officer Ferris testified he believed Bruce was intoxicated because his speech was slurred and he was "somewhat unsteady on his feet." Officer Moszer testified he also believed Bruce was intoxicated and agitated and he saw a plastic liquor bottle protruding from Bruce's pocket. Both officers testified Bruce used profanities, he walked away from them after they tried to talk with him, and he pounded his chest with his clenched fists. Both officers also testified Bruce said he would "kick [their] ass" and "put [them] in the hospital." Officer Ferris testified Bruce was standing about ten to fifteen feet from him when Bruce made those statements and he did not draw a weapon on Bruce. Officer Moszer testified he drew his Taser but did not use it. Officer Ferris testified Bruce had not then violated any laws in their presence, and after Bruce took a step toward the officers, Bruce complied with Officer Ferris's instructions to back off.

[¶ 4] All three officers testified Bruce then ran across the street and punched a bank sign. Officer Ferris testified he and Officer Moszer followed Bruce across the street, and Officer Ferris "br[ought] [Bruce] to the ground" and arrested him with the assistance of the other officers after Bruce took "steps towards [him] closing in on [him] fairly fast with clenched fists." Officer Fylling testified that after Bruce hit the bank sign, he turned toward Officer Ferris and Officer Moszer, but Officer Fylling did not know whether Bruce "actually made any forward advances." All three officers testified that Bruce did not have any weapons in his clenched fists. Officer Ferris and Officer Moszer testified they knew Bruce had a reputation for being violent with police officers and they knew Bruce was taller than each of them. Officer Ferris testified that when Bruce took steps to-

ward him, he was afraid and felt as though "[Bruce] was going to follow through on every comment that he had made. That he was going to kick our ass. That he was going to put us in the hospital." Officer Moszer testified that he believed Bruce would "put [them] in the hospital" and "break a bone [or] cause unconsciousness."

[¶ 5] After the State presented its case, Bruce moved for a judgment of acquittal under N.D.R.Crim.P. 29(a), which the district court denied. After Bruce rested his case without introducing any evidence or calling a witness to testify, the court found him guilty of menacing, stating, in part:

The officers have testified that they were dispatched into the area on a possible trespass call. They observed the defendant near the area and he was the person that was identified to them as the possible trespasser. They arrived at the scene and made contact with the defendant. They identified themselves as Fargo Police Department—or at least Officer Ferris testified he did. I think Officer Moszer wasn't certain if they identified themselves as Fargo police officers. In any event, they both arrived in marked squad cars and were both in full uniform—patrol uniform. This happened about 9:30 in the evening and it was fairly dark in the area. Although that is a fairly well lit area.

Upon initial approach, defendant made some sort of a comment that, oh, there's two of you. This is going to be fun. Nothing in there that would create the officers—a fear of the officers of being placed in imminent serious bodily injury. The defendant told them that he hadn't trespassed and walked away from them. Although they did note indicia of intoxication including slurred speech and unsteady gate. One of the officers actually saw a container of alcohol.

They followed the defendant—I think at this point the defendant thinks he should have just been allowed to leave. I think that's kind of the argument here. That the officers really are the ones who escalated the situation. But, I mean, that's just simply not good police practice. There's no way officers can simply allow someone that they believe that may be a suspect to a crime just because he said he didn't do it to just walk away without doing some more follow up.

In any event, that's not to say that the officers couldn't have handled this with a little more tact. They perhaps could have. However, the defendant got agitated by being pursued by the officers. Probably wouldn't have had he not been intoxicated is my guess, but in any event he did. At some point in time he pounded on his chest with clenched fists. At another time he pounded on a sign near the State Bank drive through. He said that he would, quote, kick their ass and put them in a hospital more than once. At one time he took a step [to]wards them. The officer said step back and he did. A second time he took a step towards them with clenched fists and did not move back. The officers attempted to get control over him and ultimately wrestled him to the ground.

The defense makes an argument throughout the course of trial that you had two officers here and they were both fully armed and both had tasers. One of them testified—or maybe both of them testified they had pepper spray. I think that goes to whether or not the officers were placed in fear.

I did review some case law. There's a decision, *State v. Touche*, 549 N.W.2d 193, North Dakota 1996. That was actually a terrorizing case, not a menacing case. But the fear element basically is the same. In that case the Supreme Court of North Dakota affirmed a district court's judgment of conviction. One of the arguments was insufficiency of the evidence. The court noted, quote, in its opinion the trial court stated we have the testimony of … the victim in that case … that she was afraid and she testified that she got a restraining order against the defendant. That would show certainly some fear of the defendant. And her testimony today was that she was afraid of the defendant. It seems very similar to the testimony of the officers that they were in fear of being attacked, assaulted by the defendant.

Certainly putting someone in the hospital should give me fear that there might be imminent serious bodily injury. I don't think the defendant has to use the words of the definition of serious bodily injury. In other words, he just has to threaten a specific. I'm going to give you extreme pain or I'm gonna give you permanent loss or impairment of the function of a bodily member or organ in order to suffice the statute for purposes of the statute.

The defendant was larger than both of the two officers quite some bit. I think the officers were justified in having this fear based on the state of intoxication, the clenching of the fists, the taking of a step, the statements, as well as the officers' experience. One of them testified that he had seen incidents in the past where fist fights had resulted in broken bones, broken noses, that sort of thing. So I think the officers were justified in their fear of imminent bodily injury.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Bruce timely appealed from the criminal judgment under N.D.R.App.P. 4(b). We have jurisdiction

under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

[¶ 7] Bruce argues the district court's decision reflects the court misinterpreted and misapplied the menacing statute in finding him guilty.

■ [¶ 8] The parties disagree on the standard of review. Bruce argues the "facts of this case are not much in dispute; rather, the central analysis is how the trial court applied those facts to the elements of the crime of menacing." Bruce argues the court incorrectly applied a subjective test of the police officers' fear under the menacing statute and, as a result, this case should be reviewed under a de novo standard. He argues the State did not prove he committed the offense of menacing.

[¶ 9] The State responds the district court properly considered the officers' subjective fear under the menacing statute and, as a result, this case should not be reviewed under a de novo standard but rather under a sufficiency-of-the-evidence standard. The State argues both officers testified they feared imminent serious bodily injury. The State asserts the court properly could have found beyond a reasonable doubt that Bruce's conduct placed the police officers in fear of imminent serious bodily injury.

[¶ 10] Section 12.1–17–05, N.D.C.C., proscribes the crime of menacing and provides: "A person is guilty of a class A misdemeanor if he knowingly places or attempts to place another human being in fear by menacing him with imminent serious bodily injury." "According to Black's Law Dictionary, 'imminent' means '[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.'" *State v. Kurle*, 390 N.W.2d 48, 49 (N.D.1986) (quoting *Black's*

*Law Dictionary* 676 (5th ed.1979)). Under N.D.C.C. § 12.1–01–04(29), "serious bodily injury" "means bodily injury that creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, permanent loss or impairment of the function of any bodily member or organ, a bone fracture, or impediment of air flow or blood flow to the brain or lungs."

■ [¶ 11] Bruce argues he made statements that he would "kick [their] ass" and "put [them] in the hospital" while he was telling the officers to leave him alone and while he was walking away from them, negating the "imminency" requirement of the statute. Relying on this Court's decision in *Kurle*, 390 N.W.2d at 49, Bruce argues he was walking away from the officers when he made the statements and the statements are not evidence of imminent threats. In *Kurle*, a defendant stated that "when you are up here alone, we will get you" while he was walking away from two individuals with whom he had just fought, and this Court held the defendant's statements spoke to a future event and did not denote sufficient imminency for menacing under N.D.C.C. § 12.1–17–05. *Id.* Unlike *Kurle*, however, Bruce's statements to the officers denoted sufficient imminency because the nature of the statements indicated he threatened to "kick [their] ass" and "put [them] in the hospital" at that time. He did not threaten to "kick [their] ass" or "put [them] in the hospital" at a future date as the defendant did in *Kurle*.

[¶ 12] Under N.D.C.C. § 12.1–17–05, Bruce could have been found guilty of menacing by either "knowingly plac[ing]" one of the police officers in fear of imminent serious bodily injury or "knowingly . . . attempt[ing] to place" one of them in fear of imminent serious bodily injury. Relying on *State v. Touche*, 549 N.W.2d

193 (N.D.1996), the district court found the police officers feared that Bruce would cause them imminent serious bodily injury because he threatened to "kick [their] ass" and "put [them] in the hospital." The court analyzed whether the officers were justified in their fear of imminent bodily injury and found:

> [T]he officers were justified in having this fear based on the state of [Bruce's] intoxication, the clenching of [his] fists, [his] taking of a step, [his] statements, as well as the officers' experience. One of [the officers] testified that he had seen incidents in the past where fist fights had resulted in broken bones, broken noses, that sort of thing. So I think the officers were justified in their fear of imminent bodily injury.

■ [¶ 13] Bruce argues *Touche* is not controlling because it involved terrorizing and not menacing. In *State v. Hass*, 268 N.W.2d 456, 459 (N.D.1978), however, this Court indicated menacing is a lesser-included offense of terrorizing. As a result, the district court did not err in comparing the fear element in the offense of terrorizing to the fear element in the offense of menacing.

■ [¶ 14] Moreover, in *Kurle*, 390 N.W.2d at 49 n. 4, this Court referred to *Biddle v. District Court in & for Fifteenth Jud. Dist.*, 183 Colo. 281, 516 P.2d 645 (1973), as an example of a case "that exhibits sufficient conduct to constitute menacing." In *Biddle*, 516 P.2d at 645–46, the court reinstated a felony count of menacing with a deadly weapon after it found a victim's subjective fear sufficient to support a claim for menacing. In *Biddle*, the victim testified at a preliminary hearing that he became afraid of the defendant when the defendant pulled a gun out of a holster and began waving the gun around and fired a shot into the victim's rear car tire. *Id.* This Court's reference to *Biddle*

in *Kurle* supports the principle that a person's subjective fear can be considered under the menacing statute. *See Kurle*, at 49 n. 4 (citing *Biddle*, at 645). That support is also consistent with the plain language of the statute, requiring a defendant either to place a person in fear of imminent serious bodily injury or to attempt to place a person in fear of imminent serious bodily injury. *See* N.D.C.C. § 12.1–17–05.

[¶ 15] Here the district court found Bruce's conduct placed the police officers in fear of imminent serious bodily injury, and we conclude the court did not misinterpret or misapply the menacing statute in relying on the police officers' subjective fear of imminent serious bodily injury. We therefore review the issues raised by Bruce under the sufficiency-of-the-evidence standard.

■ [¶ 16] Our review of cases in which a criminal defendant challenges the sufficiency of the evidence is well-established:

> "When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the [trier of fact] to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.... A [trier of fact] may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty."

*State v. Nakvinda*, 2011 ND 217, ¶ 12, 807 N.W.2d 204 (quoting *State v. Kinsella*, 2011 ND 88, ¶ 7, 796 N.W.2d 678). "When

the verdict is attacked and the evidence is legally sufficient to sustain the verdict, we will not disturb the verdict and judgment even though the trial included conflicting evidence and testimony." *Id.*

 [¶ 17] Under the sufficiency-of-the-evidence-standard, we conclude the State presented sufficient evidence for the district court to convict Bruce of menacing. Our review of the record establishes there is sufficient evidence for a reasonable fact-finder to conclude Bruce knowingly placed or attempted to place the police officers in fear by menacing them with imminent serious bodily injury. *See* N.D.C.C. § 12.1–17–05.

[¶ 18] The record reflects the police officers believed Bruce may have been intoxicated and he clenched his fists while pounding his chest during his encounter with the officers. The record also reflects Bruce threatened to "kick [their] ass" and to "put [them] in the hospital," and he took at least one step toward the officers before Officer Ferris subdued Bruce. Officer Ferris testified he was afraid and felt as though "[Bruce] was going to follow through on every comment that he had made." Officer Moszer testified that he believed Bruce would "put [them] in the hospital" and "break a bone [or] cause unconsciousness." The officers also testified about Bruce's larger relative stature and their knowledge of Bruce's reputation for violence toward police officers.

[¶ 19] " '[W]hen viewed in the light most favorable to the verdict,' " Bruce has not shown " 'the evidence reveals no reasonable inference of guilt.' " *See Nakvinda,* 2011 ND 217, ¶ 12, 807 N.W.2d 204 (quoting *Kinsella,* 2011 ND 88, ¶ 7, 796 N.W.2d 678). A reasonable fact-finder could conclude, as the district court did, that Bruce committed the crime of menacing. Because " 'there is competent evidence allowing the [court] to draw an inference rea-sonably tending to prove guilt and fairly warranting a conviction,' " we conclude the State presented sufficient evidence to convict Bruce of menacing. *See id.* (quoting *Kinsella,* at ¶ 7).

### III

[¶ 20] We affirm the criminal judgment.

[¶ 21] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.