FREDDIE LEE WATKINS AND LUTHER GRAVES, APPELLANTS, v. SHERIFF, CLARK COUNTY, NEVADA, RESPONDENTS.

No. 6821

June 26, 1972                    498 P.2d 374

*Robert G. Legakes,* Public Defender, and *Jerrold J. Courtney,* Deputy Public Defender, Clark County, for Appellants.

*Robert List,* Attorney General; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

After a preliminary hearing before Honorable Robert L. Reid, a Justice of the Peace of Las Vegas Township in Clark County, Freddie Lee Watkins and Luther Graves were bound over to stand trial in the district court on the charge of burglary.[1] Both men challenged the sufficiency of the evidence presented at the preliminary hearing by filing in the district court a petition for a writ of habeas corpus. After a hearing on the petition, the district judge denied the writ and ordered the defendants-appellants to stand trial. Hence, this appeal.

There were two witnesses to the burglary, who testified at the preliminary hearing. Johnnie Lee Williams testified:

"Q [by Paul Goldman, Esq., Deputy District Attorney, Clark County] On that date, July 2, 1971, did anything unusual occur at approximately 2:25 in the afternoon?

"A Yes. I was just pulling in Friendly Liquors, and this guy that drives the beer truck was walking around. I asked him, I said, 'Say, man, what's going on?' He said someone broke the lock on the door and he couldn't get in the truck. I said, 'Can I give you a hand?' He says, 'Well, we might be able to unlock it by going to the other side,' so we did. We unlocked the truck and he asked me to watch it while he delivered inside the bar because he didn't want to lock it and go back through the other side.

---

[1]The criminal complaint alleged that Watkins and Graves "did then and there [July 2, 1971, within Clark County, Nevada] wilfully, unlawfully, and feloniously enter, with the intent to commit larceny, that certain 1968 GMC cab-over van truck, bearing Serial No. F–32860 and 1971 Nevada License No. CT–4133, owned by PIONEER TRUCK-ING COMPANY, a corporation, 2548 West Desert Inn Road, Las Vegas, Clark County, Nevada, then and there leased to NEVADA BEVERAGE COMPANY, a corporation, being then and there parked in front of FRIENDLY LIQUORS, 1602 North H Street, Las Vegas, Clark County, Nevada."

"I was watching it, and these two gentlemen approached the truck.

"THE COURT:    What gentlemen?

"THE WITNESS:    These two right here.

"MR. GOLDMAN:    Q When you refer to two men, to whom are you referring to?

"A    These two gentlemen right here.

"Q    Which two gentlemen? Where are they sitting and what are they wearing?

"A    One wearing blue and the other wearing brown. I don't know either one of them.

"THE COURT:    Are you talking about the two black Negro males?

"THE WITNESS:    I am.

"THE COURT:    All right. The record will reflect the identification of the defendants.

"MR. GOLDMAN:    Q What occurred when the two defendants came up to you?

"A    Well, one of them said, 'You grab two cases and I will get two.'

"I said, 'No, there is a soul brother driving it and he asked me to watch it. Let it alone.'

"THE COURT:    Do you understand what that means, Mr. Courtney [Deputy Public Defender, attorney for defendants-appellants]?

"MR. COURTNEY:    No, your Honor.

"THE COURT:    He doesn't know what you mean by soul brother.

"THE WITNESS:    That means it is another Negro driving the truck.

"So, when they started to open the truck, I reached and grabbed them to try to pull them out of there.

"One of them struck me and I struck back, so we started scuffling. This one gentleman in the blue grabbed two cases and ran while me and this gentleman were scuffling.

"THE COURT:    Two cases of what?

"THE WITNESS:    I don't know whether it was two cases of whiskey or what.

"THE COURT:    You mean two boxes?

"THE WITNESS:    Yes.

"MR. GOLDMAN:    Q Go ahead.

"A    The driver came back out and they split. The police were called."

Rejoyce Williams, wife of Witness Johnnie Lee Williams, testified:

"Q [by Mr. Goldman] Did you, on July 2, 1971, have occasion to be at or near Friendly Liquors?

"A Yes, I was.

"Q About 2:25 on that date, at Friendly Liquors, did anything unusual occur?

"A Yes, it did.

"Q Would you tell the Court, please, what it was.

"A Burglary.

"MR. COURTNEY: Your Honor, I object.

"THE COURT: Objection sustained. The answer will be stricken.

"MR. GOLDMAN: Q Tell me what you saw and heard.

"A I saw the liquor truck being robbed.

"MR. COURTNEY: Object as a conclusion.

"THE COURT: The term robbed will be stricken.

"MR. GOLDMAN: Q Just what did you see, in your own words.

"A I saw two guys taking alcohol off the truck.

"Q You say two guys. Are you talking about two men?

"A Yes.

"Q Are they here in Court today?

"A Yes.

"Q Would you tell me where they are and what they are wearing?

"A One wearing blue and one in a black shirt.

"Q There are two gentlemen wearing blue.

"A The one with the handcuffs on.

"THE COURT: The record will reflect the identification of the defendants.

"MR. GOLDMAN: Q Can you describe the truck to me?

"A All I know is it was a beer truck.

"Q Do you know what color the truck was?

"A Blue and white.

"Q What did you see these two men do?

"THE COURT: All you called this witness for was to identify the vehicle.

"MR. GOLDMAN: All right. I am satisfied, if the Court is."

J. Lamar Bennett, another witness for plaintiff-respondent, testified:

"Q [by Mr. Goldman] What is your occupation?

"A I am employed with De Luca Importing Company.

"Q Are you familiar with Nevada Beverage Company?

"A Yes, I am.

"Q Are you familiar with Pioneer Trucking?

"A    Yes, I am.

"Q    What is the connection?

"A    I am secretary-treasurer and comptroller of both of them.

"Q    Were you secretary-treasurer of both of these organizations on July 2, 1971?

"A    That is correct.

"Q    Did you have in your employ at that time a Freddie Watkins or Luther Graves?

"A    No, I did not.

" . . .

"MR. GOLDMAN:    Q Mr. Bennett, I hand you what has been marked as State's proposed Exhibit 1 and 2.

"With respect to No. 1, can you identify that?

"A    Yes. This is a registration on one of our vehicles, number 52.

"Q    Exhibit 2?

"A    This is a lease agreement between Pioneer Trucking Company and Nevada Beverage Company.

"THE COURT:    Why do you need that agreement? You don't bring a deed in here when a house is burglarized, do you?

"MR. GOLDMAN:    Q Do you know who was driving the truck leased on State's proposed Exhibit 1 on July 2, 1971?

"A    Yes, our employee, Al Stark.

"THE COURT:    Was that truck owned by Pioneer Trucking Company on that date?

"THE WITNESS:    Yes, sir.

"MR. GOLDMAN:    Q In whose possession was that truck?

"A    Nevada Beverage Company.

"Q    Pursuant to the lease agreement?

"A    Yes, sir."

Although Mr. Bennett testified regarding the aforementioned lease agreement, and it was examined by counsel and the court, it was never received in evidence at the preliminary hearing.

The defendants-appellants claim that the evidence adduced at the hearing was insufficient to hold them to answer the charge, because the truck they burglarized was not described with sufficient specificity by the witnesses who testified at the hearing. We reject that contention. The evidence adduced was sufficient to show that a crime had been committed and that there were reasonable grounds to believe that defendants-appellants had committed it. See State v. von Brincken, 86 Nev. 769, 476 P.2d 733 (1970). The standard having been

met, the justice of the peace properly bound Watkins and Graves over to the district court for trial, and the district judge ruled correctly in denying their petition for habeas.

Affirmed.